PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* CARLOS JUAN FERNÁNDEZ, Defendant and Appellant.

No. 3437. Argued March 20, 1929.—Decided November 7, 1929.

*R. Muñoz Ramos,* for appellant. *José E. Figueras,* for appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Carlos Juan Fernández was convicted of manslaughter and complains of alleged irregularities in the method pursued by the district attorney while impeaching a witness for the prosecution, Manuel Pérez Elías.

After a quarrel with Enrique Pimentel, Pérez Elías went home and was changing his clothes when Enrique called to

him from the street. A brief conversation which ensued was interrupted by Paco Pimentel with friendly advice. A few minutes later Enrique Pimentel was shot by Carlos Juan Fernández.

Within an hour Pérez Elías testified before a municipal judge that after his conversation with Enrique Pimentel he remained on the balcony; that a few minutes later he heard a shot but did not know who fired it; that he then looked and saw Enrique Pimentel fall to the ground beside the gutter in front of the house next door; and that he did not see Pimentel draw any weapon.

At the trial Pérez Elías testified that Carlos Juan Fernández (following the example of Paco Pimentel) told Enrique Pimentel to drop the matter, and asked him why he wanted to fight with witness who was his friend and companion; that thereupon Enrique applied certain epithets to Fernández and struck him; that Fernández slipped and fell back; that Enrique made a gesture as if to draw a weapon and Fernández shot him.

The two statements can not be reconciled.

At the trial, before the sworn statement was exhibited to Pérez Elías, he testified that on the night in question he was summoned to appear before the municipal judge, and that he was taken first to police headquarters and then to the courthouse where he made his statement.

Here counsel for defendant objected on the ground that if the *fiscal* wanted to impeach the witness he should first announce such intention. The *fiscal* replied that if counsel could convince him that the proceeding was irregular he would acquiesce. The attorney for defendant then said that he did not want to argue, but only to assert defendant's right. The judge told the prosecuting attorney to proceed, and defendant took an exception.

The witness then continued as follows: that the statement before the municipal judge was made within an hour after the killing; that after witness had testified the judge gave

him a statement to sign; that witness believes it was read to him; and that he signed it.

When witness was asked whether his statement on the stand was to the same effect as the testimony before the municipal judge defendant objected on the ground that the witness should first be told what he had said before the municipal judge in order to ascertain whether or not he could remember what he says was reduced to writing and should be informed as to the day and hour and place where the statement was given. The *fiscal* answered that the witness had named the municipal judge before whom it was made. Defendant then insisted that it appeared from the testimony of the witness that the two statements were identical. The trial judge remarked that the *fiscal* had not finished his examination of the witness and overruled the objection, to which ruling defendant excepted.

The witness then said that he was relating what had occurred, and what he had stated to the municipal judge when the statement was typewritten; that he did not know whether the judge had omitted anything.

The witness then identified his signature and was asked to read the statement made by him before the municipal judge, which he did. Upon being again asked whether his statement upon the stand was the same as that made before the municipal judge, he answered that the typewritten statement did not correspond with his testimony given at the trial, because the former statement had not been read to him before he signed it. Asked if he had read the statement before signing it, witness answered that he had.

The witness went on to say in answer to other questions that what he had said on the stand did not appear in the written statement; that he had testified before the municipal judge to the blow received by Carlos Juan; that this did not appear in the written statement.

Here the defense again objected, without stating the grounds of the objection, and the prosecuting attorney asked

that the examination of the witness be suspended in order to put the municipal judge on the stand. The court refused the request. The district attorney then asked the witness whether or not he had made the statement contained in the typewritten document subscribed before the municipal judge, and began reading it to him. The defense objected on the ground that the document could not be read in the presence of the jury before it was introduced in evidence. The district attorney stated that his purpose was to show that the witness had made statements contrary to those made on the stand. Counsel for defendant insisted that the Supreme Court had recently decided that evidence could not be introduced in this way. The district attorney stated that what he wanted to ask the witness was whether or not the statement contained in the document was the same as his testimony on the stand, in order that the witness might then explain why the facts stated on the stand did not appear in the writing. Witness was then asked whether or not the statement acknowledged by him to have been signed before the municipal judge was so signed because it was the statement made by witness on May 20, 1926. The reply was in the affirmative. Witness was then asked whether or not he had made the statement contained in the typewritten document which was read to him by the district attorney without further objection by the defense. The reading was followed by a question as to whether or not the statement read by the district attorney was a statement contained in the document just read. Witness again answered in the affirmative. No exception was taken, and the district attorney announced that he had no further questions. Counsel for defendant then proceeded with the cross-examination.

The incident just outlined can not be commended as an example to be followed in practice, but it does not disclose reversible error.

The question as to whether or not the testimony given by Pérez Elías at the trial was the same as that given before

the municipal judge was unnecessary, but it was not unnatural nor inexcusable. The obvious purpose of the prosecution was to obtain from the witness either an admission or a denial that, when testifying before the municipal judge, he had said anything contrary to his statement on the stand. As pointed out in 2 Wigmore (2nd ed.) 471, sec. 1023, "there is . . . no objection, either of principle or of policy, to such an attempt to prove the self-contradiction by the witness himself."

The first ground of objection (that witness had not been told what he was supposed to have said before the municipal judge) was coupled with the second ground that witness had not been informed as to time, place and persons present on the former occasion. This second ground was at once shown to be untenable by the statement of the district attorney, and counsel for defendant, instead of standing on his first ground, was content to remark that, according to the witness, the two statements were identical. Thus the attention of the trial judge may have been diverted from the first ground of objection, although the remark that the *fiscal* had not concluded his examination indicates that the court thought the question was merely preliminary and therefore proper. In any event, the sworn statement was exhibited to the witness before the question was repeated, although after it had been answered and before he was called upon to explain any discrepancy between the two statements, or specifically questioned as to the one made before the municipal judge.

The answer as given shows that the witness was already aware of the shadow which coming events sometimes cast before. There was no unfair surprise either to witness or to defendant. The purpose of section 245 of the Code of Criminal Procedure is to prevent such surprise. There was no violation of the rule invoked by defendant, either as laid down in that section or as paraphrased in *People* v. *Díaz,* 22 P.R.R. 177, cited in the brief for appellant.

There was no attempt to introduce hearsay testimony un-

der a pretense of impeaching the credit of a witness, and *People* v. *Colón*, 25 P.R.R. 586 (the next case relied on by appellant) is not in point. No such purpose was imputed to the prosecution at the trial, and the only objection interposed was not based on any such ground. *People* v. *Ramírez de Arellano*, 25 P.R.R. 243, (the third case cited by appellant) does not support his contention that it is error to permit the sworn statement of a witness to be read aloud to him in the presence of the jury for the purpose of asking him whether or not he made such statement. In any event, the question can not be raised for the first time on appeal.

Other questions as to the method of impeachment employed while witnesses Miguel Castaño and Carlos Benítez Santiago were on the stand are also without merit.

Another contention is that the district court erred in refusing to strike out the testimony of Borinquen Marrero, the municipal judge, in regard to an oral confession notwithstanding the existence of a written confession to the same effect signed by the accused.

The oral confession was made by the accused in his home within a very short time after the killing. During the evening and on the morning of the next day twenty-three witnesses were examined by the municipal judge. How many of these witnesses had testified before defendant's confession was reduced to writing does not appear. The municipal judge took the oral statement in shorthand, but beyond this there is nothing to indicate that this was the confession subsequently typed by the judge and signed by defendant. It does appear that he was twice warned by the judge, first before the oral statement was made and later in the municipal court where the written confession was made. The municipal judge did not say in so many words, and was not asked to say, that the accused again testified in the municipal court and that this statement was also taken in shorthand before being typed, but that is a fair inference from the testimony as a whole. The rule which excludes parol

evidence as to the contents of a written confession does not exclude testimony concerning an oral confession made at a different time and place. The municipal judge had not testified to the contents of the written statement made and signed by the accused several hours after the commission of the offense, but had simply repeated on the stand the first statement made by the accused in his own home within a few minutes after the event and without much time for reflection. The district court did not err in refusing to strike such testimony.

Appellant also complains of certain rulings excluding evidence of specific acts tending to show the violent and dangerous character of Enrique Pimentel. The question as developed in the brief does not demand serious consideration. Such testimony was properly excluded in some instances, and where improperly excluded the same was subsequently admitted. Any error of this kind that may have been committed was harmless.

A discussion of other questions suggested by the brief for appellant would not serve any useful purpose.

The judgment appealed from must be affirmed.

Mr. Justice Texidor took no part in the decision of this case.